**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICHARD MCDANIEL, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| SEAGEN, INC., JOSEPH ANSANELLI, | ) | **FEDERAL SECURITIES LAWS** |
| CHRISTIAN BEEDGEN, SANDRA | ) | |
| BERGERON, MARGARET FRANCIS, | ) | **JURY TRIAL DEMANDED** |
| RANDY GOTTFRIED, JOHN D. HARKEY, | ) | |
| JR., TRACEY NEWELL, RAMIN SAYAR, | ) | |
| and TIMOTHY YOUNGBLOOD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Richard McDaniel ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Seagen Inc. ("Seagen" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Pfizer Inc. ("Pfizer").[1]

2.      On March 12, 2023, the Company entered into an Agreement and Plan of Merger

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

(the "Merger Agreement") with Pfizer and Pfizer's wholly owned subsidiary, Aris Merger Sub, Inc. ("Merger Sub").  The Merger Agreement provides that Company stockholders will receive $229.00 per share of Seagen common stock in connection with the Proposed Transaction.

3.      The Company's corporate directors subsequently authorized the April 24, 2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of

---

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for May 30, 2023.

Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal

question jurisdiction).

7.       Personal jurisdiction exists over the defendants because each defendant either

conducts business in or maintains operations within this District, or is an individual with

sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this

Court permissible under traditional notions of fair play and substantial justice.

8.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants

are found or are inhabitants or transact business in this District.

## THE PARTIES

9.       Plaintiff is, and has been at all times relevant hereto, the owner of Seagen

common stock.

10.       Defendant Seagen is a Delaware corporation with its principal executive offices

located at 21823 30th Drive SE, Bothell, Washington 98021.  Seagen's shares trade on the

Nasdaq Global Select Market under the ticker symbol "SGEN."  Seagen is a biotechnology

company that develops and commercializes targeted therapies to treat cancer.  Seagen is

commercializing ADCETRIS, or brentuximab vedotin, for the treatment of certain CD30-

expressing lymphomas, PADCEV, or enfortumab vedotin-ejfv, for the treatment of certain

metastatic urothelial cancers, TUKYSA, or tucatinib, for the treatment of certain metastatic

HER2-positive breast and colorectal cancers, and TIVDAK, or tisotumab vedotin-tftv, for the

treatment of certain metastatic cervical cancers.  The Company is also advancing a pipeline of

novel therapies for solid tumors and blood-related cancers designed to address unmet medical

needs and to improve treatment outcomes for patients.

11.     Defendant Felix Baker is and has been Chair of the Board and a director of the Company at all times relevant hereto.

12.     Defendant David R. Epstein ("Epstein") his and as been Chief Executive Officer and a director of the Company at all times relevant hereto.

13.     Defendant David Gryska is and has been a director of the Company at all times relevant hereto.

14.     Defendant Ted Love is and has been a director of the Company at all times relevant hereto.

15.     Defendant John Orwin is and has been a director of the Company at all times relevant hereto.

16.     Defendant Alpna Seth is and has been a director of the Company at all times relevant hereto.

17.     Defendant Nancy Simonian is and has been a director of the Company at all times relevant hereto.

18.     Defendant Sandra M. Swain is and has been a director of the Company at all times relevant hereto.

19.     Defendant Daniel Welch is and has been a director of the Company at all times relevant hereto.

20.     Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

21.     On March 13, 2023, the Company announced in relevant part:
NEW YORK & BOTHELL, Wash.--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) and Seagen Inc. (Nasdaq: SGEN) today announced that they have entered into a definitive merger agreement under which Pfizer will acquire Seagen, a global biotechnology company that discovers, develops and commercializes transformative cancer medicines, for $229 in cash per Seagen share for a total enterprise value of $43 billion. The Boards of Directors of both companies have unanimously approved the transaction.

"Pfizer is deploying its financial resources to advance the battle against cancer, a leading cause of death worldwide with a significant impact on public health," said Dr. Albert Bourla, Pfizer Chairman and Chief Executive Officer. "Together, Pfizer and Seagen seek to accelerate the next generation of cancer breakthroughs and bring new solutions to patients by combining the power of Seagen's antibody-drug conjugate (ADC) technology with the scale and strength of Pfizer's capabilities and expertise.  Oncology continues to be the largest growth driver in global medicine, and this acquisition will enhance Pfizer's position in this important space and contribute meaningfully to the achievement of Pfizer's near- and long-term financial goals."

Seagen expects to generate approximately $2.2 billion of revenue in 2023[], representing 12% year-over-year growth, from its four in-line medicines, royalties and collaboration and license agreements.  When combining the expected strong growth trajectories for these medicines with candidates that could emerge from Seagen's pipeline, subject to clinical trial and regulatory success, Pfizer believes Seagen could contribute more than $10 billion in risk-adjusted revenues in 2030, with potential significant growth beyond 2030.

Seagen is a pioneer in ADC technology, with four of the twelve total FDA-approved and marketed ADCs using its technology industry-wide.  ADCs are a transformative modality that is emerging as a powerful tool across a broad range of cancers designed to preferentially kill cancer cells and limit off-target toxicities.  Seagen has developed a leadership position in ADC technologies since its founding 25 years ago, with groundbreaking and proprietary technology that is positioned for significant growth in 2023 and beyond.  Seagen's portfolio includes four approved medicines[] that are first- or best-in-class in their respective indications across solid tumors and hematologic malignancies, including three ADCs: ADCETRIS® (brentuximab vedotin), PADCEV® (enfortumab vedotin), and TIVDAK® (tisotumab vedotin).  The company also commercializes TUKYSA® (tucatinib).  Clinical development programs are ongoing for each of these medicines for potential new tumor types

5

or expanded indications in earlier lines of therapy, with catalysts expected annually through 2027.

Seagen is also poised to expand the impact of its therapeutic approach with its broad and deep pipeline that includes eleven new molecular entities, many with the potential to treat large patient populations and all with global commercial rights.[] The proposed acquisition is also expected to enable for combination potential across both the Seagen and Pfizer pipelines and will leverage Pfizer's protein engineering and medicinal chemistry capabilities to advance Seagen's ADC technology to unlock potential novel target combinations and next-generation biologics.

Seagen is also advancing innovative technologies capable of potentially generating multiple Investigational New Drug Applications (INDs), including next-generation linker/payload technologies for ADCs and other innovative antibody platforms that directly engage the immune system to destroy tumors, such as bi-specific antibodies.

"Pfizer shares our steadfast commitment to patients, and this combination is a testament to the passion, dedication and talent of the Seagen team to achieve our mission to discover, develop, and commercialize transformative cancer medicines that make a meaningful difference in people's lives," said David Epstein, Seagen Chief Executive Officer.  "The proposed combination with Pfizer is the right next step for Seagen to further its strategy, and this compelling transaction will deliver significant and immediate value to our stockholders and provide new opportunities for our colleagues as part of a larger science-driven, patient-centric, global company."

Today, Pfizer Oncology has an industry-leading portfolio of 24 approved innovative cancer medicines that generated $12.1 billion in 2022 revenues, including the best-selling therapies for metastatic breast cancer and prostate cancer.  Pfizer's in-line portfolio is focused on four broad, key areas: breast cancer, genitourinary cancer, hematology and precision medicine, complemented by an extensive pipeline of 33 programs in clinical development. The proposed combination with Seagen would double Pfizer's early-stage oncology clinical pipeline.

"Over the past decade we've taken bold new approaches to translating scientific research into effective medicines for people living with cancer, and we have pioneered several breakthroughs in breast cancer, genitourinary cancer, hematological malignancies and precision medicine," said Chris Boshoff, Chief Development Officer Oncology and Rare Disease, Pfizer. "The addition of Seagen's world-leading ADC technology will position us at the forefront of innovative cancer care, and strongly complements our existing portfolio across both solid tumors and hematologic malignancies.  We believe the combination

of our teams, and respective areas of strength and global footprints will allow us to realize Seagen's potential and advance even more potential breakthroughs to patients with cancer."

Pfizer expects to finance the transaction substantially through $31 billion of new, long-term debt, and the balance from a combination of short-term financing and existing cash.  The transaction is expected to be neutral to slightly accretive to adjusted diluted earnings per share (EPS)[] in the third to fourth full year post close.  Pfizer expects to achieve nearly $1 billion in cost efficiencies in the third full year after the completion of the transaction.

The companies expect to complete the transaction in late 2023 or early 2024, subject to fulfillment of customary closing conditions, including approval of Seagen's stockholders and receipt of required regulatory approvals.

Pfizer's financial advisor for the transaction is Guggenheim Securities, LLC, with Wachtell, Lipton, Rosen & Katz acting as Pfizer's legal advisor. Centerview Partners LLC is serving as Seagen's financial advisor and provided a fairness opinion to Seagen's Board of Directors with Sullivan & Cromwell LLP serving as its legal advisor.  MTS Health Partners also provided financial advice to Seagen.

**The Materially Incomplete and Misleading Proxy Statement**

22.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on April 5, 2023  The Proxy Statement, which recommends that Seagen stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial projections; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor Centerview Partners LLC ("Centerview"); and (C) the Company's engagement with its additional financial advisor MTS Health Partners LP ("MTS").

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for the Company*

23.     The Proxy Statement fails to disclose material information concerning the financial forecasts for the Company, including whether the forecasts set forth therein at page

56 are the risk-adjusted projections for the Company and, if so, the assumptions underlying such risk-adjustments and a summary of the Company's non-risk-adjusted projections.[3]

24.    The Proxy Statement also fails to disclose the line items underlying the Company's forecasted: (a) Gross Profit; (b) EBIT; and (c) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning Centerview's Financial Analyses*

25.    The Proxy Statement fails to disclose material information concerning Centerview's financial analyses.

26.    With respect to the *Discounted Cash Flow Analysis* performed by Centerview, the Proxy Statement fails to disclose: (a) Seagen's estimated calendar year risk-adjusted 2034 net income used to calculate the terminal values for the Company; (b) the Company's terminal values; and (d) the Company's fully diluted outstanding shares.

27.    With respect to the *Analyst Price Targets Analysis* performed by Centerview, the Proxy Statement fails to disclose the individual price targets observed and their sources.

28.    With respect to the *Precedent Premiums Paid Analysis* performed by Centerview, the Proxy Statement fails to disclose the individual premiums observed.

*Material Misrepresentations and/or Omissions Concerning MTS's Engagement*

29.    The Proxy Statement fails to disclose material information concerning the Company's engagement of an additional financial advisor, MTS, including: (a) whether MTS performed any financial analyses for the Company in connection with the Proposed Transaction

---

[3] If the projections disclosed in the Proxy Statement are not risk-adjusted, the Proxy Statement fails to disclose the risk-adjusted projections relied upon by Centerview, including, but not limited to, the Company's risk-adjusted after-tax unlevered free cash flows over the period beginning on July 1, 2023 and ending on December 31, 2034, that formed the basis of Centerview's *Discounted Cash Flow Analysis*.

and, if so, a summary thereof; (b) the amount of any compensation MTS expects to receive in connection with its engagement; and (c) whether MTS has performed any services for any parties to the Merger Agreement in the prior two years and, if so, the nature of the services performed and amount of compensation received.

30.     The omission of the above-referenced information renders statements in the "Certain Unaudited Financial Information," "Opinion of Centerview Partners LLC" and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

31.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Seagen**

32.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Seagen is liable as the issuer of these statements.

34.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

35.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

37.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

38.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claims for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

40.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Seagen within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Seagen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

44.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange

Act.   As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  May 8, 2023                                    **LONG LAW, LLC**

                                        By:   */s/ Brian D. Long*
                                                Brian D. Long (#4347)
                                                3828 Kennett Pike, Suite 208
                                                Wilmington, DE 19807
                                                Telephone: (302) 729-9100
                                                Email: BDLong@LongLawDE.com

                                                *Attorneys for Plaintiff*